Swan *v.* Railroad.

SWAN *v.* RAILROAD.

*(Nashville.* January 12, 1901.)

COMMON CARRIER. *Right to demand demurrage.*

A common carrier may lawfully demand payment, as a condition precedent to delivery of goods to a consignee, not only of the stipulated freight charges, but likewise such reasonable charges for the unreasonable detention of its cars as may have accrued on account of the consignee's neglect or refusal to unload them, where such additional charges are contracted for and made a lien upon the goods by stipulation in the bill of lading.

Case cited and distinguished: Railroad *v.* Hunt, 15 Lea, 261.

---

FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County. JOHN W. CHILDRESS, J.

WASHINGTON & ALLEN for Swan.

SMITH & MADDEN for Railroad.

WILKES, J. This is an action for the value of some stone, and the freight paid on the same, upon the theory that the stone was shipped to plaintiff over the defendant road, but was converted by the road, and plaintiff deprived of the same.

The suit was brought before a Justice of the Peace. The defense was, in effect, the same as under a plea of general issue.

Upon trial before the Court and jury there was verdict and judgment for defendant, and plaintiff has appealed to this Court and assigned errors.

The facts, so far as necessary to be stated, are that three cars of stone were shipped to the plaintiff, P. Swan, from the Bedford (Ind.) quarries.

Mr. Swan was notified of the arrival of the cars of stone, and that upon payment of the freight the cars would be placed on the track leading to his yard, where he had a derrick and other machinery for unloading.

This track was constructed jointly by Swan and the Nashville & Chattanooga Railroad Co., and the Louisville & Nashville Railroad Co. had no interest in it or control of it.

The plaintiff, Swan, was further notified that charges for car service would begin to run after two days unless the freight was paid. Several other notices to the same effect were given him on successive days, but he failed to pay the freight until about ten days after the arrival of the first car, and seven days after the arrival of the last. He then sent a check to the company to pay the freight, but did not pay, and refused to pay any car service charges. He was informed

that there 'was a demurrage, a car service charge, of $21 upon the cars, and that this must be paid before the cars would be placed upon his track for unloading. He refused to pay anything on this account, and this suit is to recover for the value of the stone as upon a conversion.

The Louisville & Nashville Railroad Company moved the stone out of their yards after suit was brought, and unloaded it on its right of way in East Nashville, where it still remains, about two miles distant from the yards of the plaintiff.

Without passing specifically upon the errors assigned, it is only necessary to say that the real question presented in the case, and raised by the assignments, is, Did the railroad have the right to demand the prepayment of the freight before placing these cars of stone upon the plaintiff's yard track, and did it have the right to demand demurrage for failure to pay freight, and, after the freight had been paid, did it have the right to retain the cars of stone in its possession and under its control, unless and until the demurrage which had at that time attached was paid? The bill of lading under which this stone was shipped contained several clauses bearing upon the matter in controversy. Paragraph 5 is in these words: "Property not removed by the persons or party entitled to receive it within twenty-four hours after its arrival at destination, may be kept in the car depot or place of delivery of the carrier at

the sole risk of the owner of such property, or
may, at the option of the carrier, be removed
or otherwise stored at the owner's risk and cost,
and they are subject to lien for freight and all
other charges. The delivering carrier may make
a reasonable charge every day for the detention
of any car and for the use of the track after
the car has been held twenty-four hours for un-
loading, and may add such charges to all other
charges hereunder, and hold said property subject
to lien therefor."

Paragraph 10 reads as follows: "The owner or
consignee shall pay the freight at the rate hereon
stated, and all other charges accruing on said
property before delivery, and according to the
weights as ascertained by any carrier herein."
The contention of plaintiff is that the road has
no right to make any demurrage charge, and that
in any event its right to do so will not accrue
until the cars are placed upon plaintiff's track,
at the customary place of unloading, which was
the inclosed premises of the plaintiff, and reached
by the tracks of the Nashville & Chattanooga
Railroad, and not by those of the defendant. It
appears that at this time the credit of the plain-
tiff was not considered good by the defendant,
and for this reason the stone would not have
been delivered upon his premises, where it might
be unloaded by the plaintiff. The proof shows
that the defendant company was ready to deliver

the cars as plaintiff desired, provided its charges for freight and demurrage were paid. The cars were placed near by the premises of plaintiff, but on those of defendant, but were ready and conveniently placed to be delivered when the charges should be paid.

The Court charged that when the company received this stone for transportation it did so upon the terms and stipulations of the bill of lading; that it was incumbent upon it to transfer it to its yards in Nashville at a place convenient for delivery to the plaintiff at the point he desired to receive it, and that it was not incumbent upon defendants to place it on plaintiff's side track and on his premises until all proper charges were paid; that due notice of arrival should be given, and that the rights of the parties would be governed by the terms of the bill of lading.

This charge is objected to, and special requests were made, the ground or basis of all of which is that it was incumbent on the defendant road to place the cars upon the side track running into plaintiff's yard at the usual place of delivery and unloading, and until it did so, it could claim neither freight nor demurrage. This is practically all that is involved in the case.

We are of opinion the Circuit Judge was correct, and that the assignments of error are not well made.

The defendant company could not be required

to part with the possession and control of the
property until its legitimate charges were paid;
and to have placed it on the plaintiff's premises
where he could unload it as he saw proper, and
when he pleased, was virtually to part with pos-
session and to surrender its lien for freight and
other charges. The lien existed for demurrage in
this case by the express terms of the bill of lad-
ing. It was held in the case of *Railroad* v.
*Hunt,* 15 Lea, 261, that in the absence of con-
tract a railroad could not claim a lien for de-
murrage charges, so that the Hunt case is not
applicable, and the only question that could arise
is whether such a stipulation in a contract is a
reasonable one such as the Courts will enforce.

A mere statement of the proposition carries with
it an answer. If a road cannot make a reason-
able charge for detention of its cars by con-
signees, it is evident that such consignees may
delay unloading until virtually the entire rolling
stock of the road may be tied up, and its tracks
obstructed by loaded cars, awaiting the pleasure or
convenience of consignees.

We can see no reason why carriers should not
be entitled to reasonable compensation for the un-
reasonable delay and detention of their cars by
consignees (4 Elliot on Railroads, Sec. 1567; *Mil-
ler* v. *Georgia Railroad Co.,* 18 L. R. A., 323);
nor to a lien for such charges when such lien

Swan v. Railroad.

is agreed to and stipulated for · in the bill of lading. There is no complaint that the amount of charges is unreasonable.

We see no error in the judgment of the Court below, and it is affirmed with costs.